UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOSHUA TAPER | : | Case No. 1:24-cv-159 |
| Plaintiff, | : | |
| vs. | : | District Judge Jeffery P. Hopkins |
| | : | Magistrate Judge Kimberly A. Jolson |
| JON TABOR, et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion for Summary Judgment (Doc. 23) and Plaintiff's Motions to Dismiss Without Prejudice (Doc. 27, 30). For the following reasons, the Undersigned **RECOMMENDS** that Defendants' Motion be **GRANTED** and Plaintiff's Motions be **DENIED**. Plaintiff's claims against Defendants Tabor and Turner should be **dismissed without prejudice** for failure to exhaust his administrative remedies.

I.  BACKGROUND

Plaintiff, a prisoner at Ross Correctional Institution proceeding *pro se*, filed this action under 42 U.S.C. § 1983 on March 25, 2024. (Doc. 1). Initially, he brought claims against seventeen Defendants for events that occurred while he was incarcerated at Lebanon Correctional Institution (LeCI). (Doc. 1-2 at 1–2; Doc. 5 at 1 n.3). After an initial screen under 28 U.S.C. § 1915(e) and a motion to dismiss, only two claims remain. (Docs. 5, 18 (dismissing claims against all Defendants except Nance, Turner, and Tabor); Docs. 17, 21 (dismissing Defendant Nance)).

Plaintiff first alleges that on March 1, 2024, Defendant Tabor "threaten[ed]" Plaintiff that "if he [didn't] stop complaining about his due process of law being violated," he would "put [P]laintiff in the hole." (Doc. 5 at 9). The Court previously construed this allegation as a threat to

retaliate against Plaintiff if he did not stop filing grievances, in violation of his First Amendment rights. (*Id.* at 10; Doc. 6 at 9; Doc. 17 at 2, 6). Then, on March 7, 2024, Plaintiff says another prisoner assaulted him. (Doc. 6 at 16). When Plaintiff asked why he was attacked, the prisoner told him that Defendant Turner wanted Plaintiff "dead." (*Id.*). The Court construed these allegations as raising a claim for Eighth Amendment violations. (Doc. 5 at 10; Doc. 17 at 2).

On November 14, 2024, the Court set the deadline for discovery to May 14, 2025, and the deadline for dispositive motions to June 16, 2025. (Doc. 20). Neither side filed motions during the discovery period. On June 16, Defendants filed a timely Motion for Summary Judgment. (Doc. 23). Weeks later, instead of substantively responding to Defendants' Motion, Plaintiff filed a one-sentence motion to dismiss this case without prejudice. (Doc. 27). On July 11, Defendants opposed that motion, and Plaintiff filed a duplicate motion to dismiss. (Docs. 29, 30). Three days later, the Court set deadlines for Plaintiff's reply to his motions and his response to Defendants' summary judgment motion. (Doc. 31). The Court warned Plaintiff that if he did not file a response, the Court would treat Defendants' Motion for Summary Judgment as unopposed. (*Id.*).

On July 22, Plaintiff filed a reply to his Motions to Dismiss. (Doc. 32). Because that filing raised new arguments in favor of voluntary dismissal, the Court granted Defendants leave to submit a sur-reply, which Defendants filed on July 30, 2025. (Docs. 33, 34). On the same day, Plaintiff filed a document titled, "Response to Defendants' Motion for Summary Judgment." (Doc. 35). Yet instead of substantively responding to Defendants' dispositive motion, this filing largely rehashes Plaintiff's arguments in favor of his Motions to Dismiss. (*See id.*). Plaintiff has not filed a true response to Defendants' Motion for Summary Judgment, and the time to do so has passed. Accordingly, the Undersigned treats the Motion as unopposed.

With that, Defendants' Motion for Summary Judgment (Docs. 23, 35) and Plaintiff's

2

Motions to Dismiss (Docs. 27, 29, 30, 32, 34) are ripe for consideration.

**II.     STANDARD**

The parties' motions bring two rules into play.  Starting with Plaintiff's Motions to Dismiss, Rule 41 of the Federal Rules of Civil Procedure gives a plaintiff the right to voluntarily dismiss his case without prejudice "before the opposing party serves wither an answer or a motion for summary judgment."  Fed. R. Civ. P. 41(a)(1)(A)(i).  After that, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  The latter limitation exists to "protect the nonmovant from unfair treatment." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994).  Whether to grant a plaintiff's request to dismiss his case is soundly within the trial court's discretion. *Id.*; *see also Rosenthal v. Bridgestone/Firestone, Inc.*, 217 F. App'x 498, 500 (6th Cir. 2007) (reviewing a dismissal under Rule 41(a)(2) for abuse of discretion).

In deciding whether to allow voluntary dismissal of an action without prejudice, courts consider whether the defendant will suffer "plain legal prejudice." *Grover by Grover*, 33 F.3d at 718; *Rosenthal*, 217 F. App'x at 500.  Courts weigh factors "such as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Grover by Grover*, 33 F.3d at 718.  Importantly, "[t]hese factors are only a guide . . . and the trial judge ultimately retains discretion to grant the motion to dismiss." *Damron v. Jewell*, No. 5:22-cv-41, 2023 WL 11944502, at *2 (W.D. Ky. May 2, 2023) (citation modified), *report and recommendation adopted sub nom. Damron v. Hewell*, No. 5:22-cv-41, 2023 WL 11944465 (W.D. Ky. June 13, 2023).

Meanwhile, Rule 56(a) governs Defendants' summary judgment motion.  A court grants

3

summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

### III. DISCUSSION

Plaintiff presents a few reasons why, in his view, the Court should allow him to dismiss his case without prejudice. The Undersigned is sympathetic to his troubles, but the relevant factors weigh against granting his request for voluntary dismissal. However, because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit, this case should be dismissed without prejudice anyway. The Undersigned begins with Plaintiff's motions before addressing Defendants'.

#### A. Plaintiff's Motions for Voluntary Dismissal

In support of his request for voluntary dismissal, Plaintiff says that in November 2024, LeCI staff placed him in segregation for 90 days. (Doc. 32 at 1). Once released from segregation, another prisoner assaulted Plaintiff, which resulted in his transfer to a hospital for emergency jaw

4

surgery. (*Id.* at 1–2). A month after that, Plaintiff moved to Ross Correctional Institution, but his legal mail "was being sent to LeCI" instead of this new facility. (*Id.* at 2). Finally, Plaintiff says that he is allowed to visit the prison's law library only once a month, and his limited time and resources are focused on his litigation related to his criminal conviction. (*Id.* at 2–4). Simply put, Plaintiff says he has been prevented from fully litigating his claims in this case.

Overall, these reasons are compelling. And they are the kinds of circumstances where courts often grant a plaintiff's request for voluntary dismissal. *See, e.g.*, *Damron*, 2023 WL 11944502, at *2 (allowing a voluntary dismissal without prejudice where a prisoner alleged he was suffering from a serious medical condition that prevented him from pursuing his case); *Clouse v. Big Sandy Reg. Det. Ctr.*, 289 F.R.D. 452, 454 (E.D. Ky. 2013) (granting a motion to dismiss without prejudice where the plaintiff could not litigate his case, in part, because he was on "lockdown status with little or no access to court documents"). Still, the Court must weigh Plaintiff's justifications against Defendants' "effort and expense of preparation for trial, excessive delay and lack of diligence on the part of plaintiff in prosecuting the action, . . . and whether a motion for summary judgment has been filed by the defendant." *Grover by Grover*, 33 F.3d at 718.

As far as Defendants' efforts and expenses go, no trial date has been set, and Defendants do not say they expended significant resources on discovery. (*See generally* Docs. 29, 34). In fact, Defendants do not mention the costs of discovery at all, nor does Plaintiff say he propounded discovery requests. (*Id.*). As such, the Undersigned finds that this factor is largely neutral, if not in Plaintiff's favor.

Weighing against Plaintiff, however, is the fact that Defendants filed a summary judgment motion months ago. (Doc. 23 (filed June 16, 2025)). Defendants seemingly spent significant time and resources in preparing the Motion, which totals 23 pages, includes several declarations from

5

witnesses, and contains hundreds of pages of exhibits. (*Id.*). While this fact counts against Plaintiff, it is not dispositive. As the Sixth Circuit has said, "a pending motion for summary judgment is a factor that should be considered, but its existence does not mandate a finding of legal prejudice." *Rosenthal*, 217 F.App'x at 502.

Fundamentally though, the Undersigned cannot ignore Plaintiff's lack of diligence in prosecuting this case and his delay in moving for dismissal. According to Plaintiff, his time in segregation ended in February 2025, his surgery took place shortly after, and his transfer to Ross Correctional Institution occurred a month after the surgery. (Doc. 32 at 1–2). Even assuming Plaintiff wasn't transferred until late March 2025, Plaintiff waited three or four months to move for dismissal. (*See* Doc. 27 (filed on July 2)). Importantly, the Undersigned has reason to suspect Plaintiff could have made his request sooner. For instance, Plaintiff moved to voluntary dismiss a separate action in this Court on May 14, 2025, but he waited over a month to do the same here. (Doc. 27 (filed July 2)); *Taper v. Warden, Ross Corr. Inst.*, No. 1:25-cv-273 (S.D. Ohio May 14, 2025) (Doc. 4).

What's more, Plaintiff's initial filing included no explanation of why he wanted to dismiss the case. (*Id.* (containing one sentence)). In fact, he did not provide any reasons supporting his request until the Court ordered him to file a reply. (*See* Doc. 31 (order); Doc. 32 (Plaintiff's reply)).

This lack of diligence is a pattern in this action. On August 19, 2024, Defendants filed a motion to dismiss the case, and Plaintiff did not respond on time. (Docs. 13, 14). Indeed, he did not respond until the Court warned him that Defendants' motion would be treated as unopposed. (*Id.*; *see* Doc. 15 (Plaintiff's response, filed on October 11)). The same occurred with Defendants' summary judgment motion. Only after the Court warned him the motion would be deemed unopposed did Plaintiff finally file his purported response. (Doc. 31 (noting Plaintiff had not

6

responded and warning him Defendants' summary judgment motion would be treated as unopposed if he did not file a response); Doc. 35 (Plaintiff's response)).  And even then, the response did not address Defendants' Motion—it merely offered more to support his motions to dismiss.  (Doc. 35 (arguing in support of voluntary dismissal).

On this record, the Undersigned cannot find that Plaintiff has diligently pursued this action or moved for voluntarily dismissal.  In such circumstances, courts routinely deny plaintiffs' requests to dismiss their cases without prejudice.  *See Doran v McGinnis*, 158 F.R.D. 383, 389 (E.D. Mich. 1994) (denying a plaintiff's request for voluntary dismissal without prejudice where a summary judgment motion was pending); *Durr v. Corr. Med. Servs.*, No. 1:09-cv-1116, 2011 WL 662698, at *2 (W.D. Mich. Jan. 18, 2011) (recommending denying a motion to dismiss without prejudice where defendants had already moved for summary judgment, and the plaintiff moved for dismissal in response), *report and recommendation adopted*, No. 1:09-cv-1116, 2011 WL 662966 (Feb. 14, 2011); *Butler v. Williams*, No. 14-2948, 2016 WL 5416537, at *1–2 (W.D. Tenn. Sept. 28, 2016) (denying a motion for voluntary dismissal where the defendant moved for summary judgment, and the plaintiff did nothing to meaningfully prosecute his case); *Ouellette v. Vill. Of Beverly Hills Pub. Safety Dep't*, No. 15-cv-11604, 2017 WL 1213415, at *7–8 (E.D. Mich. Jan. 20, 2017) (denying a motion for voluntary dismissal, even where the plaintiff explained he lacked resources to continue litigation, because a summary judgment motion had been filed, and the plaintiff was not diligent), *report and recommendation adopted*, No. 15-cv-11604, 2017 WL 875298 (E.D. Mich. Mar. 6, 2017).

So too here.  In sum, Plaintiff provides strong reasons to support dismissal, and it does not appear that Defendants expended significant resources conducting discovery and preparing for trial.  Yet Defendants already filed a summary judgment motion, and in the end, Plaintiff's lack of

diligence tips the scales. On balance, the Undersigned finds a voluntary dismissal without prejudice is inappropriate at this late stage and **RECOMMENDS** that Plaintiff's Motions to Dismiss (Docs. 27, 30) be **DENIED**.

### B. Defendants' Motion for Summary Judgment

Moving to Defendants' Motion, they offer three reasons why summary judgment is warranted. First, Defendants say Plaintiff failed to exhaust his administrative remedies as the Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, *et seq.*, requires. (Doc. 23 at 3–7). Second, they contend his claims fail on the merits. (*Id.* at 7–21). Lastly, they raise qualified immunity as a defense. (*Id.* at 21–22).

Ultimately, the Undersigned agrees that Plaintiff did not exhaust his available administrative remedies. Therefore, this action should be dismissed without prejudice, and the Undersigned need not address Defendants' remaining arguments.

#### 1. Exhaustion and Ohio's Procedures

Under the PLRA, "exhaustion is mandatory," and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). An inmate must exhaust his claim by "taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance procedure[.]" *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)). This requirement exists to timely notify prison authorities of prisoners' potential claims, so they may investigate and remedy those claims before prisoners pursue litigation. *See Potee v. Cook*, No. 2:19-cv-5058, 2021 WL 3076396, at *3 (S.D. Ohio July 21, 2021).

Ohio's prison grievance procedure has three steps, and the PLRA demands compliance with all of them. *See Reed-Bey*, 603 F.3d at 324. First, "[w]ithin fourteen calendar days of the

8

event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." Ohio Admin. Code § 5120-9-31(J)(1).  Second, "[i]f the inmate is dissatisfied with the informal complaint response, or the informal complaint process has been waived, the inmate may file a notification of a grievance with the inspector of institutional services." *Id.* at § 5120-9-31(J)(2).  Once received, "[t]he inspector of institutional services shall provide a written response to the grievance within fourteen calendar days of receipt." *Id.*  Third, "[i]f the inmate is dissatisfied with the disposition of grievance, the inmate may file an appeal with the office of the chief inspector." *Id.* at § 5120-9-31(J)(3).  Once the chief inspector decides the appeal, the prisoner has exhausted his administrative remedies. *See Ball v. Ohio*, No. No. 2:20-cv-1759, 2020 WL 1956836, at *3 (S.D. Ohio Apr. 23, 2020), *report and recommendation adopted*, No. 2:20-cv-1759, 2020 WL 2468742 (S.D. Ohio May 13, 2020).

    2.  *Plaintiff's Exhaustion Efforts*

Defendants contend that Plaintiff did not exhaust his administrative remedies for either of his claims.  In support, Defendants provide a declaration from Ohio Department of Rehabilitation and Correction Assistant Chief Inspector Emma Collins and Plaintiff's grievance and kite history from January 1 through December 31, 2024.  (Doc. 23-1).

Starting with Defendant Tabor, Plaintiff alleges that the events underlying this claim occurred on March 1, 2024.  (Doc. 6 at 9).  On March 6, Plaintiff filed an informal complaint about a March 1 interaction with Defendant Tabor.  (Doc. 23-1 at 5).  But the informal complaint says Defendant Tabor "threaten[ed] to put [Plaintiff] in the hole" for saying a staff member's first name, not that Defendant Tabor threatened to put Plaintiff "in the hole" if Plaintiff "[didn't] stop complaining about his due process of law being violated," as alleged in the Complaint.  (*Compare*

9

23-1 at 5 *with* Doc. 6 at 9). Further, Plaintiff did not pursue this complaint through the second and third steps of the grievance process. (Doc. 23-1 at 3, ¶¶ 14–15; *see also id.* at 5 (submitting only an informal complaint)). As a result, he did not exhaust his administrative remedies for this claim. In fact, it does not appear that he even filed a complaint about the same incident noted in the Complaint.

For Defendant Turner, Plaintiff says the relevant events took place on March 7, 2024. (Doc. 6 at 16). Plaintiff did not file any informal complaints about this incident, though he sent kites to prison staff complaining about other interactions with Defendant Turner. (*See* Doc. 23-1 at 30 (kite to staff dated March 24, 2024, and saying Defendant Turner is "racist" and "doesn't do his job" (cleaned up)), 36 (kite saying that Defendant Turner signed a conduct report against Plaintiff), 140 (kited dated April 19, 2024, saying Plaintiff "put numerous [informal complaints] on [Defendant] Turner for targeting [Plaintiff] and harassing [him]" (cleaned up)). Therefore, this claim is also unexhausted.

But this issue is not totally straightforward. On March 8, 2024, LeCI placed Plaintiff on a grievance system restriction, meaning he could not submit any informal complaints, grievances, or appeals on his prison-issued tablet. (Doc. 23-4 at 9–10). Yet this restriction does not allow Plaintiff to avoid the PLRA's exhaustion requirement entirely. Importantly, the grievance system restriction did not remove every avenue for Plaintiff to raise his complaints with prison staff. For instance, the restriction allowed Plaintiff to "kite medical staff directly for medical needs." (*Id.* at 9). He could also communicate with unit staff "and kite the inspector immediately" if an emergency "that could present a substantial risk of physical injury" occurred. (*Id.*). Further, the letter informing Plaintiff about the restriction encouraged him to contact staff "daily" during their rounds and to "address [his] issues through the kite system" to "Department Heads." (*Id.*).

10

In other words, Plaintiff had available remedies he could exhaust, even after his grievance restriction began on March 8, 2024. Under the PLRA, he was required to take advantage of them. *See Pullen v. Combs*, No. 1:17-cv-255, 2020 WL 419947, at *8 (S.D. Ohio Jan. 27, 2020) ("Even where an inmate is on a grievance restriction, he still must exhaust the administrative remedies that remain available to him.") (collecting cases), *report and recommendation adopted*, No. 1:17-cv-255, 2020 WL 1451564 (S.D. Ohio Mar. 25, 2020); *McDougald v. Esham*, No. 1:16-cv-497 2018 WL 1010214, at *7–8 (S.D. Ohio Feb. 21, 2018) (finding the plaintiff's failure to use the kite system while on similar a grievance restriction required dismissal of his claims for failure to exhaust), *report and recommendation adopted*, No. 1:16-cv-497, 2018 WL 3008331 (S.D. Ohio June 15, 2018). It does not appear Plaintiff submitted any kites to prison staff about the March 1 and March 7 incidents involving Defendants Tabor and Turner. For instance, though he filed kites about a March 1 incident with Defendant Tabor, those kites do not describe the same incident alleged in the Complaint. (Doc. 23-1 at 188, 204, 209). Likewise, Plaintiff submitted kites complaining about Defendant Turner, but none reference the alleged March 7 assault. (*Id.* at 30, 36, 140). And Plaintiff seemingly had access to paper forms for informal complaints but did not submit any. (*Id.* at 2–3 (averring Plaintiff did not file any informal complaints about these incidents), 82 (saying staff had not received any paper complaints from Plaintiff); *see, e.g.*, *id.* at 82 (kite saying he had paper informal complaints) 127 (kite asking for paper complaints and being told to kite other staff members)).

At bottom, "[t]o be excused from complying with the mandatory PLRA exhaustion requirement, Plaintiff must show that the prison's grievance process was unavailable to him." *Pullen*, 2020 WL 419947, at *9 (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)). More specifically, he must show that the administrative procedures "operate[] as a simple dead end—

11

with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; that the procedures are "so opaque" that they are "incapable of use"; or that "prison administrators thwart inmates from taking advantage of [the grievance process] through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

That is not the situation here. On numerous occasions during his grievance restriction, Plaintiff sent kites to staff and received responses, assistance, or further information on who to contact for help. (*See, e.g.*, Doc. 23-1 at 77 (saying a staff member was looking into an issue with Plaintiff's property), 89 (asking for new clothing), 90 (requesting passes for programs), 91 (same), 93 (same), 94 (same), 95 (reissuing a law library pass after Plaintiff sent a kite saying he didn't receive his), 96 (addressing medical treatment and referral issues), 101 (discussing problems with videos and receiving next steps), 102 (submitting a complaint via kite and being told staff will look into the matter), 103 (receiving information on how to appeal a placement in segregation), 105–08 (responding to Plaintiff's requests for officers' first names), 112 (stating, in response to a kite, that the Rules Infraction Board would see Plaintiff "next week"), 114 (telling Plaintiff to reach out to a unit manager regarding a complaint and cell move), 115 (instructing Plaintiff to kite a sergeant for a property issue), 124 (receiving information on when forms would be delivered), 125 (complaining notary requests were denied and receiving information on who to contact about this issue)). Staff did not prevent him from submitting kites at any point. (*Cf.* Doc. 23-4 at 9 (stating his kite access could be revoked if he abused this process)). And given his extensive kite history, Plaintiff clearly understood what he needed to do to obtain assistance or submit kites during the restriction period. (*See generally* Doc. 23-1 (containing hundreds of kites)).

In sum, Defendants provide ample evidence showing that Plaintiff failed to exhaust his available administrative remedies. Plaintiff submits nothing in response. (*Cf.* Doc. 35 (discussing

12

only his pending motions for voluntary dismissal)). On this record, the Undersigned cannot conclude that any genuine issue of material fact remains on the issue of exhaustion. *Mattox v. Edelman*, 851 F.3d 583, 589–90 (6th Cir. 2017) (saying summary judgment is appropriate when there is an "absence of a genuine dispute as to any material fact regarding non-exhaustion"). Consequently, the Undersigned **RECOMMENDS** that Plaintiff's case be **DISMISSED without prejudice** for failure to exhaust his administrative remedies. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004) ("A dismissal under § 1997e should be without prejudice."); *Bell v. Konteh*, 450 F.3d 651, 654–55 (6th Cir. 2006); *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

### IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Plaintiffs' Motions to Dismiss the case without prejudice (Docs. 27, 30) be **DENIED** and Defendants' Motion for Summary Judgment (Doc. 23) be **GRANTED**. More specifically, the Undersigned **RECOMMENDS** that this case be **DISMISSED without prejudice** for failure to exhaust administrative remedies. Because dismissal is appropriate on this basis, the Undersigned does not address Defendants' merits or qualified immunity arguments.


Date: August 7, 2025                              /s/ Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE


### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting

13

authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).